UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

            - against -             :            **OPINION**

JUANITO CORDOBA-BERMUDEZ,            :            08 Cr. 1290 (DC)

            Defendant.            :

- - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/14
```

**APPEARANCES:**        PREET BHARARA, ESQ.
                United States Attorney for the
                Southern District of New York
                        By:  Jeffrey Alan Brown, Esq.
                        Assistant United States Attorney
                One Saint Andrew's Plaza
                New York, New York  10007


                JUANITO CORDOBA-BERMUDEZ
                Defendant pro se
                DIN: 70645-054
                USP-Leavenworth
                1300 Metropolitan Ave.
                Leavenworth, Kansas  66048


CHIN, Circuit Judge

        On August 10, 2010, defendant Juanito Cordoba-Bermudez

pled guilty to conspiracy to provide material support to a

foreign terrorist organization in violation of 18 U.S.C.

§ 2339B.  On June 1, 2011, I sentenced him principally to 180

months' incarceration.  Cordoba-Bermudez appealed the judgment

of conviction, and the Second Circuit affirmed on August 29,

2012.  United States v. Mora-Pestana, 496 F. App'x 98, 100 (2d

Cir. 2012) (summary order).

Proceeding pro se, Cordoba-Bermudez moves pursuant to

28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

on the basis that (1) the Court improperly participated in plea

discussions; (2) after Cordoba-Bermudez pled guilty, the

Government made factual assertions that he had not admitted; (3)

the Court erred in instructing Cordoba-Bermudez that he would

not be able to later withdraw his guilty plea; and (4) the Court

erred in applying a terrorism enhancement at sentencing.[1]

## BACKGROUND

A.   **The Facts**

Between at least October 2007 and up to February 2009,

Cordoba-Bermudez and others conspired to provide "material

support or resources" to the Fuerzas Armadas Revolucionarias de

Colombia (the "FARC").  (PSR ¶ 2).  The FARC was designated as a

foreign terrorist organization on October 8, 1997 by the United

States Secretary of State.  (PSR ¶ 2).

---

[1]     Because I find that "it plainly appears from the face of the
[section 2255] motion and . . . the prior proceedings in the case that
[Cordoba-Bermudez] is not entitled to relief," I do not order the United
States Attorney to file an answer to the instant motion.  See Rules Governing
Section 2255 Proceedings For the U.S. Dist. Courts 4(b); Armienti v. United
States, 234 F.3d 820, 823 (2d Cir. 2000).

-2-

Cordoba-Bermudez organized a smuggling group that delivered narcotics in exchange for supplies, which were then transported to the FARC by boat.  (PSR ¶ 11).  Cordoba-Bermudez communicated repeatedly with a high-ranking member of the FARC (PSR ¶ 10), and discussed the procurement and transport of cocaine, weapons, military uniforms, and other supplies.  (PSR ¶¶ 13-16; see also Ind't ¶ 8).  Cordoba-Bermudez was paid $4,500 in exchange for five boat trips to transport these supplies to the FARC.  (PSR ¶ 31).

B.   **Prior Proceedings**

   1.   **The Indictment**

On February 5, 2009, Cordoba-Bermudez was indicted on one count of conspiracy to provide material support or resources to a foreign terrorist organization under 18 U.S.C. § 2339B.  (Ind't ¶ 7; see also PSR ¶ 2).

   2.   **The Plea Allocution**

On August 10, 2010, Cordoba-Bermudez pled guilty to the single conspiracy count.  (Plea Tr. 28:6).  In a letter submitted pursuant to United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991), the Government set forth its calculation under the Sentencing Guidelines, placing Cordoba-Bermudez at an offense level of 37 and in Criminal History Category VI.  (PSR ¶

4).  This calculation was based on U.S.S.G. § 2M5.3(a) for a base offense level of 26; the addition of two levels for the use of firearms during the offense pursuant to U.S.S.G. § 2M5.3(b)(1)(B); the addition of 12 levels because the offense was intended to promote a federal crime of terrorism pursuant to U.S.S.G. § 3A1.4(a); a reduction of two points for an acceptance of responsibility through a guilty plea under U.S.S.G. § 3E1.1(a); and a reduction of one point for providing timely notice of the intention to plead guilty under U.S.S.G. § 3E1.1(b).  (Id.).  The Guidelines calculation resulted in a range of 360 months to life imprisonment.  The statutory maximum for the offense of conviction, however, was 180 months' imprisonment, pursuant to 18 U.S.C. § 2339B.  (Id.).

During the plea hearing, Cordoba-Bermudez indicated that he had fully discussed the case, the indictment, the Guidelines, and the Pimentel letter with his attorneys.  (Plea Tr. 5:6-9, 7:14-21, 15:4-6, 13:4-18).  The Court instructed him on and he acknowledged that he understood the advisory nature of the Guidelines and his inability to withdraw a guilty plea subsequent to receiving his sentence from the Court.  (Plea Tr. 15:7-9, 16:15-22).

### 3.   The Sentencing

Cordoba-Bermudez appeared for sentencing on June 1, 2011.  He submitted a sentencing letter arguing that the 18 U.S.C. § 3553(a) factors supported a sentence below the 15-year statutory maximum because (1) the U.S.S.G. § 3A1.4 enhancement inflated Cordoba-Bermudez's advisory guideline to a level disproportionately related to his culpability; (2) he suffered and continued to suffer from psychological trauma and post-traumatic stress disorder; and (3) it would create an unfair disparity to impose a sentence on Cordoba-Bermudez, as a transporter, that members of the FARC could receive.  (App. Br. 5).

The PSR adopted the Guidelines range as calculated in the Pimentel letter.  (PSR ¶ 4).  I adopted the factual recitations and the Guidelines calculation set forth in the PSR.  (Sent. Tr. 4:7-8).  I then sentenced Cordoba-Bermudez to a term of imprisonment of 180 months, followed by a period of supervised release of three years, and a mandatory special assessment of $100.  (Sent. Tr. 37:1-7).  Judgment was entered on June 6, 2011.

4.   **The Direct Appeal**

On June 13, 2011, represented by counsel, Cordoba-Bermudez appealed his sentence and conviction to the Second Circuit.  Cordoba-Bermudez argued that (1) the District Court erred procedurally by failing to consider the personal factors enumerated in 18 U.S.C. § 3553(a); (2) the sentence was substantively unreasonable in light of these factors; and (3) the District Court failed to explain how the sentence fulfilled the goals of the Sentencing Reform Act.  (App. Br. 25); see also Mora-Pestana, 496 F. App'x at 99-100.  The Second Circuit rejected each of these arguments and affirmed both the sentence and the conviction.  See Mora-Pestana, 496 F. App'x at 100.

4.   **The Instant § 2255 Motion**

On August 9, 2013, proceeding pro se, Cordoba-Bermudez filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## DISCUSSION

Cordoba-Bermudez argues that (1) the Court improperly participated in plea discussions during the plea hearing; (2) the Government offered factual assertions at sentencing that he had not admitted; (3) the Court erred in instructing Cordoba-Bermudez at the plea allocution that he would not be

able to withdraw his guilty plea after he was sentenced; and (4)
the Court erred in applying a terrorism enhancement at
sentencing.

First, I conclude that all of Cordoba-Bermudez's
claims are procedurally barred.  Cordoba-Bermudez's claims that
the Court improperly participated in plea discussions and that
the Government offered factual evidence after the plea fail
procedurally because Cordoba-Bermudez did not raise these claims
on direct appeal and has not shown cause for his failure to do
so or prejudice as a result.  The claim that the Court erred in
its plea instructions fails because Cordoba-Bermudez offers no
justification for his failure to raise the claim on direct
appeal.  The claim that the Court erred in applying the
terrorism enhancement fails because it was raised on direct
appeal and there has been no intervening change of law to
justify relitigating the issue.

Second, assuming _arguendo_ that Cordoba-Bermudez's
claims are not procedurally barred, I conclude that they fail on
the merits.

## I.   **Procedural Bar**

For the reasons that follow, Cordoba-Bermudez is
procedurally barred from making any of the four claims in the
instant § 2255 motion.

-7-

**A.   Applicable Law**

A district court cannot consider a § 2255 claim that was not raised on direct appeal unless a petitioner can show "cause for failing to raise his claim at the appropriate time and prejudice from the alleged error." Campino v. United States, 968 F.2d 187, 189 (2d Cir. 1992). At the same time, "a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)). "Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." Id. (quoting Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980), cert. denied, 450 U.S. 923 (1981)).

If the issue is raised for the first time in a § 2255 motion, the defendant must satisfy the "cause and prejudice standard" by showing "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982). Ineffective assistance of counsel may be sufficient cause for failing to raise an issue on appeal.

See, e.g., <u>Fiumara v. United States</u>, 727 F.2d 209, 212-13 (2d Cir. 1984).

For a habeas petitioner "[t]o prevail on a claim of ineffective assistance of counsel," he must show "(1) that counsel's performance 'fell below an objective standard of reasonableness' . . . and (2) that there is a 'reasonable probability' that, but for the deficiency, the outcome of the proceeding would have been different." <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. As to reasonableness, counsel is not under a duty to raise every "colorable" claim, <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983), and "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

B.   **Application**

Cordoba-Bermudez cites ineffective assistance of appellate counsel as the reason he failed to raise his first two claims on direct appeal, specifically that I improperly participated in plea discussions and that the Government offered factual assertions after Cordoba-Bermudez pled guilty that he

had not admitted.   I reject this argument because appellate
counsel's conduct was not unreasonable and did not prejudice
Cordoba-Bermudez.

On direct appeal, counsel did not act unreasonably by
"omit[ting] significant and obvious issues while pursuing issues
that were clearly and significantly weaker."  Cf. Mayo, 13 F.3d
at 533-34.  On appeal, Cordoba-Bermudez claimed, first, that his
sentence was procedurally flawed because I failed to address the
defense's arguments at sentencing and failed to fully explain
how the sentence fulfilled the goals of the Sentence Reform Act;
and second, that I failed to give adequate weight to
Cordoba-Bermudez's personal circumstances in sentencing.  (App.
Br. 25).  These claims were not "clearly and significantly
weaker" than those he raises in the instant § 2255 motion, the
merits of which are discussed below.  Accordingly, there is not
a "reasonable probability" that had counsel raised these claims
"the outcome of the proceeding would have been different."
McKee, 167 F.3d at 106.  Ineffective assistance of appellate
counsel, therefore, fails to constitute a causal factor in
Cordoba-Bermudez's failure to raise these claims.

Cordoba-Bermudez next argues that I erred during the
plea hearing when I stated that he would be "bound to his guilty
plea and would not be able to withdraw" it.  (Def.'s Mot. to

Vacate 8 (citing Plea Tr. 16:19-21)).  Cordoba-Bermudez did not,

however, raise this issue on direct appeal, nor does he offer an

explanation in his § 2255 motion for his failure to do so.

Accordingly, he is procedurally barred from asserting this claim

in the instant motion.  See Campino, 968 F.2d at 189-90.

Finally, Cordoba-Bermudez challenges my application of

the terrorism enhancement pursuant to U.S.S.G. § 3A1.4.

Specifically, he argues that I failed to establish his specific

intent or to explain his motivations for the offense.  These

arguments were raised, however, on direct appeal.  (App. Br.

21-22).  See Mora-Pestana, 496 F. App'x at 99-100.  Accordingly,

this claim may be considered in the instant § 2255 motion only

if there has been an intervening change in law that would have

exonerated Cordoba-Bermudez on direct appeal.  See Sanin, 252

F.3d at 83.  Cordoba-Bermudez fails to allege any change in law

in his § 2255 motion.  It is therefore not procedurally

appropriate to relitigate the application of the terrorism

enhancement.

In sum, Cordoba-Bermudez's claims are procedurally

barred either because the claims were considered and rejected on

appeal or because he did not raise them on direct appeal and has

not demonstrated sufficient cause for failing to do so.

-11-

## II. __Merits__

Even assuming __arguendo__ that Cordoba-Bermudez is not
procedurally barred from bringing the § 2255 claims, they fail
on the merits.

### A.   __Plea Hearing__

A guilty plea must be "a 'voluntary and intelligent
choice among the alternative courses of action open to the
defendant.'"  __Wilson v. McGinnis__, 413 F.3d 196, 198-99 (2d Cir.
2005) (quoting __North Carolina v. Alford__, 400 U.S. 25, 31
(1970)).  Rule 11 of the Federal Rules of Criminal Procedure
governs the entering, acceptance, and withdrawal of pleas.  Fed.
R. Crim. P. 11.

As a preliminary matter, I took care to ensure that
Cordoba-Bermudez understood the proceedings and that his plea
was made voluntarily and intelligently.  An interpreter was
present and, early in the proceedings, I questioned whether
Cordoba-Bermudez had difficulty understanding the interpreter,
to which Cordoba-Bermudez responded "[n]o, no, none."  (Plea Tr.
3:20-23).  I also instructed Cordoba-Bermudez that "[i]f at any
time you don't understand something, let me know," to which
Cordoba-Bermudez responded "[o]kay."  (Plea Tr. 4:3-5).
Cordoba-Bermudez did not voice any concerns.  Moreover,

throughout the guilty plea and sentencing proceedings,
Cordoba-Bermudez was represented by a team of three attorneys.

Cordoba-Bermudez bases three of his challenges on
discussions during the August 10, 2010 plea hearing.  He argues
that (1) the Court improperly participated in plea discussions,
(2) after Cordoba-Bermudez pled guilty, the Government offered
factual assertions that he had not admitted, and (3) the Court
erred in instructing Cordoba-Bermudez that he would not be able
to later withdraw his guilty plea.  A review of the record
shows, however, that all three claims fail on the merits.  I
discuss each in turn.

### 1.   Court Participation in Plea Discussion

While Cordoba-Bermudez's *pro se* motion is not clearly
written, it appears that he contends that the Court erred by
initiating and participating in plea discussions, directing him
to change his statements concerning his involvement with the
FARC, and misleading him into thinking that the Court would be
sympathetic to a coercion argument.  (See Def.'s Mot. to Vacate
5).  He argues that his plea was not valid because it was not
made voluntarily and intelligently.  See McGinnis, 413 F.3d at
198.  These claims fail, for, as discussed below, I did not
initiate or participate in plea negotiations, nor did I direct
him to change his statements concerning his involvement with the

FARC, nor did I mislead him into thinking I would be sympathetic
to a coercion claim.

Rule 11 requires a court to advise the defendant of
his rights and determine that the defendant understands his
rights and is pleading guilty voluntarily, and that a factual
basis exists for the plea.  Fed. R. Crim. P. 11(b); United
States v. Davila, 133 S. Ct. 2139, 2148 (2013) (holding that
appellate court reviews "all that transpired in the trial court
in order to assess the impact of the error on the defendant's
decision to plead guilty").  Accordingly, I had a duty to ensure
that Cordoba-Bermudez understood the charge and the implications
of his guilty plea and that his representations regarding his
involvement with the FARC were accurate and complete.  The
participation that Cordoba-Bermudez challenges merely reflects
these efforts.

I was advised by Cordoba-Bermudez's counsel that he
wished to plead guilty, and I accordingly conducted a plea
allocution.  (See Plea Tr. 5:1-4).  The issue of
Cordoba-Bermudez's willful involvement with the FARC arose as he
detailed his interactions supporting the group.

> THE COURT:  Now you also said you did this
> to save your own life and the lives of your
> family members. Did you bring the supplies
> [to the FARC] intentionally?

THE DEFENDANT:  I felt forced to.

(Plea Tr. 20:2-5).  Cordoba-Bermudez's attorney then interceded

to explain the statement that he "felt forced to" engage in the

conduct.

> MR. CELEDONIO:  I believe that forced in the
> sense, your Honor, that, as Mr. Cordoba
> mentioned to the Court, family members of
> his had been assassinated as part of -- had
> been victims of FARC activity.  So it is in
> that sense, in the knowledge that --
>
> THE COURT:  Yeah, I understand.  But in
> other words, we can't -- I don't know if
> he's telling me he was coerced into doing
> this.  I mean it still has to be knowing and
> willful and intentional participation.
>
>     Did you know that you were doing -- I
> mean you knew -- did you know that you were
> bringing supplies to the FARC?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And you intended to bring
> supplies to the FARC?  Is that true?
>
> THE DEFENDANT:  Yes.

(Plea Tr. 20:6-22).  I then explained the difficulty I would

have in accepting a guilty plea if the defendant was alleging

that he was coerced into participating in the offense.

> THE COURT:  The question is can he later
> argue that his will was overborne.  I mean I
> don't have the exact language in front of
> me, but that's my concern.
>
> MR. BROWN [for the Government]:  I share the
> concern, Judge.  I think it's problematic.
> I think maybe a couple of questions in the

nature of:  Are you saying that you
shouldn't be held responsible for this
because it wasn't your choice to do it, or
more vernacular questions about coercion.

THE COURT:  I think there has to be a choice
element to it.

MR. BROWN:  I agree.

(Plea Tr. 20:25-21:10).

Next, I explained the distinction between coerced

actions and voluntary actions, and questioned Cordoba-Bermudez

at length to determine whether his participation with the FARC

was coerced or intentional, ultimately concluding that his

actions were indeed intentional.

THE COURT:  And I guess let me just say a
couple of things, give counsel a moment to
chat with the defendant.

Now, Mr. Cordoba Bermudez, you're
telling me that you did this to save your
own life, the lives of your family members.

Now, this is something that will
certainly be an issue for sentencing.  When
I decide to impose a sentence, I will
certainly look at that.  I'm not making any
promises, but that is something that you can
argue and I'll listen and I'll decide.

But if you're telling me that you had
no choice, that you had no choice in the
matter but to do this, if you're telling me
that they coerced you into doing this and
you didn't do it voluntarily and willfully,
then I don't believe I can accept your
guilty plea.

I want you to tell me the truth.  But
you've got to -- if you want to plead
guilty, you've got to truthfully tell me
whether, indeed, you are responsible for
your actions here.

So why don't you take a moment, discuss
it with your lawyers, and then I'll come
back to you.

(Pause)

MR. CELEDONIO:  Thank you, your Honor.

THE COURT:  Okay. Mr. Cordoba Bermudez, did
you do this, that is provide materials to
the FARC, voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Were you paid for this, by the
way?

THE DEFENDANT:  Yes, I was paid.

THE COURT:  You were paid for each trip that
you made?

THE DEFENDANT:  Yes.

THE COURT:  And did you do this, that is
bring the supplies, at least in part because
of the money?

THE DEFENDANT:  Yes.

THE COURT:  Did anyone hold a gun to your
head and say you've got to do this?

THE DEFENDANT:  No.  No one.

THE COURT:  Could you have said no?

THE DEFENDANT:  To them?

THE COURT:  Yeah.  Could you have
said --- after the first time, let's say

after the first time, could you have said:
No, I don't want to do this?

(Pause)

THE DEFENDANT:  Yes.  I could have said
no.

THE COURT:  And just to back up, just so I'm
clear, you had an agreement or understanding
with at least one other person, that is the
people who hired you, to bring supplies to
the FARC?  True?

THE DEFENDANT:  Yes.

THE COURT:  And you agreed to do that?

THE DEFENDANT:  Yes.

THE COURT:  And you did that?

THE DEFENDANT:  Yes.

THE COURT:  And when you made that
agreement, at least after the first
time -- I assume -- I'm sorry.

After the first time, for the other
four times, someone hired you to do the same
thing?

THE DEFENDANT:  Yes, the same ones did.

THE COURT:  And when you made those
agreements to bring supplies to the FARC,
did you know that what you were doing was
wrong and illegal?

THE DEFENDANT:  Yes.

(Plea Tr. 21:11-23:20).  Hence, far from improperly

participating in plea negotiations, I was merely ensuring that

there was a factual basis for the guilty plea.  <u>See</u> Fed. R.
Crim. P. 11(b)(3).

By admitting that he engaged in the conduct
voluntarily, that he did so at least in part because he was paid
to assist the FARC, and that he could have refused to
participate in an activity he acknowledged that he knew was
illegal, Cordoba-Bermudez clarified that he had not been coerced
into assisting the FARC.  Finally, I never instructed
Cordoba-Bermudez to change his statements.  Rather, I urged him
to tell the truth.  (<u>See</u> Plea Tr. 22:1-3).

In sum, I did not initiate any plea discussions with
Cordoba-Bermudez.  Further, I did not participate in any private
plea discussions, but instead fulfilled my obligation to
participate in an open plea hearing.  In doing so, I properly
questioned Cordoba-Bermudez as to his voluntary participation
with the FARC, but did not instruct or encourage him to plead
guilty.  The transcript as a whole undermines the implicit
argument underlying Cordoba-Bermudez's claim, namely that his
plea agreement was invalid because it was not made voluntarily
and intelligently.

**2.   Government Addition of Factual Evidence After Plea**

Cordoba-Bermudez next claims that the Government erred by adding facts to the record after the plea hearing.  This claim fails for three reasons.  First, Rule 11 requires a court to make a determination, which can include Government input, as to the factual basis for the plea.  Second, a factual dispute is not a basis for invalidating a plea.  Third, the claim misrepresents the discussions at the plea hearing.

First, it is standard procedure when a defendant enters a guilty plea for the court to ask the Government to summarize the evidence it would present if the defendant were to go to trial.  Here, the Government provided information on Cordoba-Bermudez's agreement with the FARC and the type of materials he transported for the group.  (Plea Tr. 24:7-23).  Rule 11 states that a court must inquire into, among other things, whether there is a sufficient factual basis for the plea.  See Fed. R. Crim. P. 11(b)(3); see also McCarthy v. United States, 394 U.S. 459, 464-67 (1969).  The Advisory Committee notes explain that a court can satisfy itself "that the conduct which the defendant admits constitutes the offense charged" through "inquiry of the defendant or the attorney for the government, or by examining the presentence report, or

otherwise." Fed. R. Crim. P. 11 Advisory Committee's notes to
1966 Amendments. Here, I satisfied Rule 11, in part, by
inquiring into the Government's evidence, to determine whether
the plea was "supported by an independent basis in fact for each
of the elements of the offense." (Plea Tr. 28:20-22).

Second, even if Cordoba-Bermudez disputes the accuracy
of some of the facts that the Government presented at the plea
hearing, disputed facts are not a basis for invalidating a plea.
Rule 11 does not require a court to determine whether a jury
would find the defendant guilty at trial or whether the evidence
shows "it is even more likely than not that the defendant is
guilty." United States v. Maher, 108 F.3d 1513, 1524 (2d Cir.
1997). Instead, a court is required "to assure itself simply
that the conduct to which the defendant admits is in fact an
offense under the statutory provision under which he is pleading
guilty." Id. Rule 11 requires a "judge's assessment that the
facts of the case fit the elements of the crime." United States
v. Smith, 160 F.3d 117, 121 n.1 (2d Cir. 1998) (emphasis in
original). To the extent Cordoba-Bermudez disagreed with facts
in the record, he had the opportunity to address these disputes
in accordance with the procedures described in United States v.
Fatico, 579 F.2d 707 (2d Cir. 1978).

Third, Cordoba-Bermudez's claim contradicts the record because the Government's contribution to the plea hearing occurred before the defendant entered a plea of guilty and only confirmed some of the information Cordoba-Bermudez had already volunteered.  As to timing, the Court asked Cordoba-Bermudez about the nature of the FARC as a guerilla organization, the FARC's use of weapons intended to endanger lives, the fact that the FARC killed people and destroyed property, and whether the FARC engaged in hostage taking for political purposes.  (See Plea Tr. 25:8-26:23).  Cordoba-Bermudez pled guilty after this line of questioning, and after the Government's addition to the factual record.  (Plea Tr. 28:4-6).  Furthermore, after the Government presented facts at the proceeding, the Court asked: "Are you pleading guilty voluntarily and of your own free will?", and Cordoba-Bermudez responded in the affirmative. (Plea Tr. 28:13-15).  The claim that the Government added additional information after the guilty plea is thus factually inaccurate.

Moreover, the alleged additional facts the Government added to the discussion did not go beyond the substance of what Cordoba-Bermudez had already described himself.  After Cordoba-Bermudez discussed his activities with the Court in depth, the Court asked the Government "what the evidence would

-22-

be if the defendant were to go to trial."  (Plea Tr. 24:4-6).

The Government stated that based on information it had collected

through wiretaps, it would present evidence of phone

conversations between Cordoba-Bermudez and FARC members and the

nature of supplies and arms that Cordoba-Bermudez had shipped.

(Plea Tr. 24:7-23).  Cordoba-Bermudez had already discussed

these facts.  He had answered affirmatively earlier in the

testimony that he "had an agreement or understanding with at

least one other person . . . who hired [him] to bring supplies

to the FARC" (Plea Tr. 23:3-9), admitting that he had

communication with FARC representatives.  He also had admitted

earlier that he had transported communications equipment,

specifically "military clothing . . . [and] firearms."  (Plea

Tr. 18:19-25).  The Government, therefore, did not add

significant new facts, but rather elaborated on those that

Cordoba-Bermudez had already disclosed to the Court.

      Hence, this claim fails.

### 3.   Court Instructions on Guilty Plea

      Cordoba-Bermudez's third contention, that the Court

misinformed him that he would be "bound to" his guilty plea and

unable to withdraw it, is also contradicted by the record.

The transcript of the plea allocution proceeding shows that the Court explained to Cordoba-Bermudez that he could not withdraw his guilty plea after <u>sentencing</u>:

> THE COURT:  Do you understand that if your attorneys or anyone else has attempted to predict what your sentence will be, that the prediction could be wrong?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And that's because no one, not your attorneys, not the government can or should make any promises to you as to what your sentence will be as your sentence cannot be decided until after the presentence report is completed, I have ruled on any objections to the report, and I have decided whether there is any basis to go above or below the guideline range.
>
> Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And finally, do you understand that even if your sentence turns out to be different from what your attorney or anyone else -- attorneys or anyone else has told you it might be or even if your sentence turns out to be different from what you expect, you will still be bound to your guilty plea and you will not be allowed to withdraw your plea of guilty?
>
> THE DEFENDANT:  Yes.

(Plea Tr. 16:2-22).  Cordoba-Bermudez's contention that the Court instructed him that he would be prohibited from withdrawing his guilty plea after the plea hearing therefore fails.

-24-

In sum, Cordoba-Bermudez fails to show that the Court committed any error with respect to his guilty plea.  See United States v. Yang Chia Tien, 720 F.3d 464, 469 (2d Cir. 2013).

**B.**   **Sentencing Hearing**

Cordoba-Bermudez argues that I erred in applying the terrorism enhancement pursuant to U.S.S.G. § 3A1.4 because I failed to determine his specific intent and his motivation for providing material support to the FARC.

**1.**   **Applicable Law**

The Guidelines provide for a sentencing enhancement "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism."  U.S.S.G. § 3A1.4.  A federal crime of terrorism is one that "(A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of [a list of predicate offenses, including § 2339B]."  18 U.S.C. § 2332b(g)(5).

The "involved" and "intended to promote" prongs of § 3A1.4 are distinct, and have different components.  United States v. Awan, 607 F.3d 306, 313 (2d Cir. 2010).  "To qualify as a federal crime of terrorism that may serve as a predicate for a § 3A1.4 enhancement, an offense must be listed in 18 U.S.C. § 2332b(g)(5)(B) and, in addition, it must be an 'offense

-25-

. . . that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.'"   Id. at 314 (quoting 18 U.S.C. § 2332(g)(5)(A)).  An offense "satisfies the 'involved' prong of the terrorism enhancement so long as the government shows by a preponderance of the evidence that [the defendant] had the specific intent to commit a[] [qualifying] offense."  Id. at 317 (internal quotation marks and citations omitted).  An enhancement pursuant to the "intended to promote" prong, in contrast, applies "where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism, even though the defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism."  Id. at 314.  Accordingly, "the defendant himself does not have to commit an offense listed in § 2332b(g)(5)(B), and the defendant's offense need not itself be 'calculated' as described in § 2332b(g)(5)(A)."  Id.

### 2.  Application

Cordoba-Bermudez challenges the applicability of the § 3A.1 enhancement on the grounds that he lacked the specific intent required by the statute.  This argument fails.

Cordoba-Bermudez alleges that the Court misapplied the sentencing enhancement because it "failed to determine whether

[he] acted with specific intent, and that the underlying felony must have been calculated to influence or affect the conduct of the government." (Def.'s Mot. to Vacate 9). This argument addresses the requirements to satisfy the "involved" prong of the sentencing enhancement pursuant to 18 U.S.C. § 2332b(g)(5)(B). See Awan, 607 F.3d at 314, 317 (finding specific intent to commit an offense calculated to influence conduct of government was required under the "involved" prong); see also United States v. Stewart, 590 F.3d 93, 138 (2d Cir. 2009).

It was not necessary to assess whether Cordoba-Bermudez intended to influence government actions, however, because his conduct satisfied the second -- or "intended to promote" -- prong of § 3A.1. See Awan, 607 F.3d at 314. Cordoba-Bermudez's offense "need not itself be 'calculated' as described in § 2332b(g)(5)(A)," as long as it was "intended to encourage, further, or bring about" the crime of terrorism. Id. Under prong two, it is sufficient that the FARC committed one of the § 2332b(g)(5) offenses calculated to influence government and that Cordoba-Bermudez intended to promote the FARC's activities.

First, the Secretary of State designated the FARC as a foreign terrorist organization on October 8, 1997. The record

shows Cordoba-Bermudez conceded that the FARC engaged in federal crimes of terrorism that were calculated to influence government.  The record shows significant evidence that the FARC members Cordoba-Bermudez supported committed "a federal crime of terrorism."  At the plea hearing, Cordoba-Bermudez identified several § 2332b(g)(5)(B) offenses conducted by the FARC that constitute acts that, when calculated to influence government, constitute a federal crime of terrorism under the statutory definition, such as use of explosives and kidnapping.  (Plea Tr. 25:12-26:14); see 18 U.S.C. § 2332b(g)(5)(B)(i).  As discussed, this offense requires the FARC's calculation to affect the government in addition to the prohibited activities. Cordoba-Bermudez admitted that he understood that the FARC's efforts were calculated to influence the government.  (Plea Tr. 19:18-21 (affirming the FARC's motivations were "in part for political reasons")).  Moreover, at the sentencing hearing, counsel distinguished between Cordoba-Bermudez, "an individual who is charged with rendering assistance to and ferrying goods for [the FARC], and the actual FARC members who are the individuals, if anyone, who are engaged in terrorist activity." (Sent. Tr. 22:1-5).  Accordingly, the record supports the activities by the FARC constitute "a federal crime of terrorism."  See 18 U.S.C. § 2332b(g)(5).

Because the FARC's activities constitute a federal crime of terrorism, the next inquiry is whether Cordoba-Bermudez intended to "encourage, further, or bring about" these crimes. Awan, 607 F.3d at 314. Cordoba-Bermudez specifically explained his intention to support the group. At the plea allocution, he admitted to knowingly and voluntarily bringing supplies to the FARC, including "food, . . . military clothing, telephones, and in certain occasions, in certain boxes there were some weapons," including firearms. (Plea Tr. 20:17-23, 22:8-10, 18:19-25). At his sentencing, I made several findings of fact based on the evidence in the record, including in particular the transcripts of his phone conversations. I noted:

> In part, the line sheets show that he was actively involved. Even assuming he was a go-between, even assuming he was following others' direction, he was very much into it. I think the words I used earlier are accurate, and I think the government's description is accurate, that he was participating with vim and vigor. He is very much an active participant in the three telephone conversations that I just reviewed.

(Sent. Tr. 34:25-35:7). I acknowledged that "Mr. Cordoba Bermudez is not a terrorist" but concluded that "he did support the FARC." (Sent. Tr. 36:1-3). Indeed, I found, "[t]here is really no question that he did. He admitted to it. He supported the FARC in a material way. Some of it was food . . . and clothing, but part of it was guns, including AK-47's and other

assault rifles and 11,000 rounds of AK-47 ammunition."  (Sent. Tr. 36:3-7).  Accordingly, his intent to further the activities of a group that committed federal crimes of terrorism satisfied the "intent to promote" prong of the § 3A1.4 sentencing enhancement.

### CONCLUSION

For the reasons set forth above, Cordoba-Bermudez has not demonstrated any basis for relief under 28 U.S.C. § 2255. Because Cordoba-Bermudez has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2255 (as amended by the Antiterrorism and Effective Death Penalty Act).  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

SO ORDERED.

Dated:    New York, New York
          March 19, 2014


DENNY CHIN
United States Circuit Judge
Sitting by Designation

-30-